

FILED

Mar 29 2018, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Larry F. Whitham
Whitham, Hebenstreit & Zubek, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Commissioner, Indiana
Department of Insurance,

*Appellant-Respondent*,

v.

Alvin C. Putman,

*Appellee-Petitioner*.

March 29, 2018

Court of Appeals Case No.
49A05-1706-MI-1402

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

Trial Court Cause No.
49D07-1606-MI-20114

**Brown, Judge.**

[1] The Commissioner of the Indiana Department of Insurance appeals the trial court's order reversing its decision to revoke Alvin C. Putman's bail agent license. The issue is whether the court erred in entering its order. We reverse and remand.

## Facts and Procedural History

[2] On September 17, 2015, the Enforcement Division of the Indiana Department of Insurance filed a Motion to Revoke Bail Agent License with the Commissioner which alleged that Putman had been found guilty of battery as a class D felony on September 16, 2015, in Fulton County (the "Criminal Cause") and which requested an order revoking Putman's bail agent license. That same day, the Commissioner issued an order revoking Putman's license and providing that he may not reapply for a license until ten years from the date of his conviction or release from prison, parole, or probation, whichever is later. On January 21, 2016, Putman filed a motion to rescind the Commissioner's order stating that he was convicted of battery as a misdemeanor.

[3] On February 3, 2016, the Enforcement Division filed a Motion to Modify Revocation Order on Bail Agent License stating that the court in the Criminal Cause entered a sentence against Putman on November 24, 2015 as a class A misdemeanor and requesting that the Commissioner issue a modified order which reflected the appropriate restriction on reapplication of five years instead of ten years as originally ordered. Putman filed a reply arguing that his misdemeanor battery conviction did not constitute a qualifying offense to

revoke his license because it was not a misdemeanor in which an element of the offense involves violence under Ind. Code § 27-10-1-6.[1] On February 12, 2016, the Commissioner entered Findings of Fact and Modified Order Revoking Bail Agent License which found that, since Putman's conviction was entered as a class A misdemeanor battery, which is a misdemeanor with an element of violence, the order should be modified to reflect the appropriate restriction and entered a modified order that Putman's bail agent license was revoked and that he may not reapply for a license until five years from the date of his conviction or release from prison, parole, or probation, whichever is later. On February 17, 2016, Putman filed a motion for a hearing before the Commissioner.

[4]    On April 6, 2016, an administrative law judge (the "ALJ") held a hearing. At the hearing, the following exchange occurred:

> [ALJ]: Yes. So I think it boils down to a question of whether or not a person who commits a Class A misdemeanor battery causes injury.
>
> [Putman's Counsel]: Okay. And injury is defined as to include pain, your Honor. And I would ask the Court to take judicial notice of Indiana Code 35-31.5-2-29 . . . that defines bodily injury: Any impairment of physical condition including physical pain. The fact is that Mr. Putman was convicted of battery based upon spanking his grandson. And the whole purpose of spanking his grandson was to dissuade his grandson from doing the behavior, continuing the behavior of which he was engaged in. It

---

[1] Ind. Code § 27-10-1-6 provides: "'Disqualifying offense' means: (1) a felony; or (2) a misdemeanor if an element of the offense involves dishonesty, violence, or a deadly weapon."

was to inflict some degree of transient physical pain. That's the whole purpose of spanking a child.

[ALJ]: Yes. There's a difference between pain and injury.

[Putman's Counsel]: Well, not really. Not according to that statute. Bodily injury includes physical pain.

[ALJ]: Includes.

[Putman's Counsel]: Okay. The testimony that was provided at trial and that we'll provide you again today is there was no injury, no visible injury of any kind to this child. No marks. No redness. No bruises. Nothing.

Appellant's Appendix Volume II at 120-121. Counsel for the Commissioner noted that the dictionary definition of violence "is using or involving the use of physical force to cause harm or damage to someone or something." *Id*. at 124-125. The ALJ stated "[s]o there was a use of force here or physical force," and Putman's counsel responded "[i]f you call spanking physical force." *Id*. at 125. Later during the hearing, Putman's daughter indicated that there was a criminal action brought against Putman based upon a spanking which he administered to her son, that Putman is a father figure in her son's life, that her son had been with Putman over a weekend, and that she always checked her son over anytime he went anywhere and there were no abrasions, contusions, or bruises on him after that weekend. When asked, "[s]o from this spanking that was administered to your son . . . , for which [Putman] has now been convicted of a misdemeanor[,] were there any outward signs of any kind, visible signs of any kind, that anything had been done to your son which left a mark," she answered "No." *Id*. at 155-156. She testified:

On the recording, [her son] is screaming and crying that he is being choked. He was being carried because when he goes into full meltdown, he flops on the ground kicking and screaming. So my father picked him up the best he knew how, trying to not get kicked and bit and scratched, and when he accidentally hit the dial button and it went to a recording, [her son] is screaming and hollering, "You're choking me," on the recording, screaming.

*Id.* at 156-157.

[5] On April 21, 2016, the ALJ issued Findings of Fact, Conclusions of Law and Recommended Order. The ALJ concluded that Putman's conviction of battery as a class A misdemeanor warrants the revocation of his bail agent license with a five-year waiting period before being eligible to reapply under Ind. Code § 27-10-3-8(d). Putman filed an objection to the ALJ's recommended order. On May 6, 2016, the Commissioner entered a Final Order which adopted in full the ALJ's Findings of Fact, Conclusions of Law and Recommended Order.

[6] On June 6, 2016, Putman filed a Petition for Judicial Review and for Stay of Final Order with the trial court. In his petition, Putman stated that his conviction for battery as a class A misdemeanor resulted from a spanking which he administered to his grandchild and argued that battery as a class A misdemeanor does not include an element of violence and that his bail agent license should be restored. On August 17, 2016, this court affirmed Putman's conviction for battery as a class A misdemeanor in the Criminal Cause by memorandum decision. *See Putman v. State*, No. 25A03-1512-CR-2253 (Ind. Ct. App. Aug. 17, 2016). The memorandum decision states that Putman

inadvertently called a bank, the bank's telephone recording system activated, and the recording system captured a loud, four-minute beating. Bank employees listened to the recording and called the police. In the recording, one can hear the sounds of Putman striking his grandchild several times and breathing heavily. The recording captured Putman's grandchild repeatedly screaming "Ow! Ow! Ow!" and crying in fear. *See Putman*, No. 25A03-1512-CR-2253, slip op. at 2. At one point the child coughed repeatedly, Putman responded sarcastically "[y]eah, cough cough cough," next the child screamed "[y]ou're choking me!", and Putman said, "[y]ou think I care?" *Id*. Putman shouted "God damn you!" and called the child "smart-assed," "smart-mouthed," and a "baby." *Id*. In the decision, we observed that Putman's physical assault interfered with the child's ability to breathe and that a reasonable finder of fact could infer from the child's screams and choking that Putman caused him to experience physical pain, and we rejected Putman's argument that the record reflects that he was engaging in reasonable discipline of the child.

[7] On March 6, 2017, the trial court held a hearing on Putman's petition for judicial review at which it took judicial notice of this Court's August 17, 2016 memorandum decision. On April 18, 2017, the trial court entered Findings of Fact, Conclusions of Law and Judgment. It found that, because Putman was convicted of battery as a class A misdemeanor, the Commissioner's revocation of Putman's license would be in accordance with Indiana law if an element of the offense involved violence and concluded that "[a]n A misdemeanor battery

in the State of Indiana does not include an element of violence." Appellant's Appendix Volume II at 15. The court ordered that the Commissioner's May 6, 2016 Final Order be set aside. It also ordered that Putman was authorized to continue exercising the rights and privileges associated with his bail agent license and that his license shall not be revoked or otherwise restricted based upon the misdemeanor conviction.

[8] On May 9, 2017, the Commissioner filed a motion to correct error arguing that the relief the court granted in ordering that Putman's license would not be restricted based upon the misdemeanor conviction was not available on judicial review and requested that the court vacate its order with respect to prohibiting future actions of the Commissioner and remand to the Commissioner for further proceedings. On May 30, 2017, the trial court issued an Order on Motion to Correct Error which granted the Commissioner's motion and remanded the matter to the Commissioner for any further proceedings which are or may become necessary. On June 29, 2017, the Commissioner filed a notice of appeal.[2]

---

[2] Putman argues in his appellee's brief that the Commissioner's appeal is untimely and that the trial court's order granting the Commissioner's motion to correct errors did not extend the period during which the Commissioner was required to file a notice of appeal. Ind. Appellate Rule 9(A) provides in part that a party initiates an appeal by filing a notice of appeal with the Clerk of the Indiana Supreme Court, Court of Appeals and Tax Court within thirty days after the entry of a final judgment is noted in the chronological case summary. Appellate Rule 9(A) further provides: "However, if any party files a timely motion to correct error, a Notice of Appeal must be conventionally filed within thirty (30) days after the court's *ruling* on such motion is noted in the Chronological Case Summary . . . ." (Emphasis added). Here, the trial court's ruling on the Commissioner's motion to correct error is noted in the chronological case summary in an entry dated May 30, 2017, and the Commissioner's notice of appeal is file-stamped by the Clerk on June 29, 2017. The Commissioner's notice of appeal is not untimely. Also, to the extent Putman asserts the Commissioner may

## *Discussion*

The issue is whether the trial court erred in reversing the Commissioner's decision to revoke Putman's bail agent license. The Administrative Orders and Procedures Act limits judicial review of agency action. *Fishburn v. Ind. Pub. Ret. Sys.*, 2 N.E.3d 814, 821 (Ind. Ct. App. 2014), *trans. denied*. An agency action will be reversed only if the court determines that a person seeking judicial relief has been prejudiced by an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence. *Id.*; *see* Ind. Code § 4-21.5-5-14(d).

A trial court and an appellate court both review the decision of an administrative agency with the same standard of review. *Fishburn*, 2 N.E.3d at 821. We defer to the agency's expertise and will not reverse simply because we may have reached a different result. *Id*. The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity. *Id.*; Ind. Code § 4-21.5-5-14(a). We give deference to an

raise only claims on appeal which were raised in its motion to correct error, we have observed that "a party filing a motion to correct error need not raise every issue in the motion that will be raised on appeal," *Dixon v. State*, 566 N.E.2d 594, 595 (Ind. Ct. App. 1991), *trans. denied*, and that a party does not waive its right to appeal a claim by omitting the claim from its motion to correct error. *Marsh v. Dixon*, 707 N.E.2d 998, 1000 (Ind. Ct. App. 1999), *trans. denied*.

administrative agency's findings of fact, if supported by substantial evidence, but review questions of law de novo. *Fishburn*, 2 N.E.3d at 821. On review, we do not reweigh the evidence. *Id.*

[11] The Commissioner argues that battery as a class A misdemeanor fits the definition of a disqualifying offense under Ind. Code § 27-10-1-6 and that Putman was convicted of battery as a class A misdemeanor because he beat and choked his grandson. It asserts that the offense of battery is elevated to a class A misdemeanor if it results in bodily injury and that it reasonably found that battery as a class A misdemeanor has an element which involves violence under Ind. Code § 27-10-1-6.

[12] Putman responds that battery does not require an act of violence and that the Commissioner failed to properly apply Ind. Code § 27-10-1-6 and Ind. Code § 35-42-2-1. He contends the Commissioner failed to apply the common and ordinary meaning to the word "element." He states that the Commissioner "has interpreted the statute in such a way which led the Commissioner to conclude that violence is an 'element' of the crime for which the Bail Agent was convicted, and such determination is contrary to law." Appellee's Brief at 19.[3]

---

[3] To the extent Putman challenges portions of the Commissioner's brief which cites language from this court's August 17, 2016 memorandum decision, we note that, at the March 6, 2017 hearing, counsel for the Commissioner asked if the trial court would like to take notice of the memorandum decision, the court answered "I mean, I can certainly take notice of that," and Putman's counsel stated: "We certainly — there's no discussion, no disputed facts, that he was convicted of a Class A misdemeanor. We knew that when we before and that hasn't changed." Transcript Volume 2 at 3. We decline to strike the portions of the Commissioner's brief which recite language from this court's August 17, 2016 memorandum decision.

[13] Ind. Code § 27-10-2-1 provides that the Commissioner shall administer Ind. Code §§ 27-10 which regulates bail agents. Ind. Code §§ 27-10-3 govern licensure and registration. Ind. Code § 27-10-3-3 provides in part that the application for a license, in addition to other requirements, to serve as a bail agent must affirmatively show that the applicant is of good moral character. Ind. Code § 27-10-3-8(d) provides in part that "[t]he commissioner shall revoke the license of any person who is convicted of a disqualifying offense immediately upon conviction," "[a] person convicted of a felony is not eligible to reapply for a license until ten (10) years from the date of conviction or release from imprisonment, parole, or probation, whichever is later," and "[a] person convicted of a misdemeanor disqualifying offense is not eligible to reapply for a license until five (5) years from the date of conviction or release from imprisonment, parole, or probation, whichever is later."

[14] Ind. Code § 27-10-1-6 provides: "'Disqualifying offense' means: (1) a felony; or (2) a misdemeanor if an element of the offense involves[4] dishonesty, violence, or a deadly weapon." Ind. Code § 35-42-2-1 provides in part that a person who knowingly or intentionally "touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor" and that the offense "is a Class A misdemeanor if it . . . results in bodily injury to any other person." Ind.

---

[4] While the dissent asserts that the revocation of Putman's license would only be justified if "an element of the offense [*included*] . . . violence," (emphasis added and bracketed text added by dissent), we observe that Ind. Code 27-10-1-6 merely provides that a misdemeanor is a disqualifying offense "if an element of the offense *involves* . . . violence." (Emphasis added).

Code § 35-31.5-2-29 provides: "'Bodily injury' means any impairment of physical condition, including physical pain."

[15] To the extent we must interpret these statutes, our goal is to determine and give effect to the intent of the legislature. *Fishburn*, 2 N.E.3d at 824. If the statutory language is clear and unambiguous, we require only that the words and phrases it contains are given their plain, ordinary, and usual meanings to determine and implement the legislature's intent. *Id*. A statute is ambiguous, and open to judicial interpretation, where it is reasonably susceptible to more than one interpretation. *Id*. If a statute is ambiguous, we seek to ascertain and give effect to the intent of the legislature. *Id*. In doing so, we read the act as a whole and endeavor to give effect to all of the provisions. *Id*. We further presume that the legislature intended its language to be applied in a logical manner consistent with the underlying policy and goals of the statute. *Id*.

[16] In addition, an interpretation of a statute by an administrative agency charged with the duty of enforcing the statute "is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *Id*. (citing *LTV Steel, Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000)). "In particular, we defer to the agency's reasonable interpretation of such a statute even over an equally reasonable interpretation by another party." *Id*. (citing *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012)).

[17] The Commissioner determined that Putman's offense, battery against his grandchild as a class A misdemeanor, constituted a disqualifying offense under

Ind. Code § 27-10-1-6 and thus served as grounds for the revocation of Putman's bail agent license under Ind. Code § 27-10-3-8(d). We conclude that the Commissioner's interpretation of Ind. Code § 27-10-1-6 is reasonable. "Violence" is generally defined as "[p]hysical force exerted for the purpose of violating, damaging, or abusing" or "[a]busive or unjust exercise of power." THE AMERICAN HERITAGE DICTIONARY 1921 (4th ed. 2006). It is also defined as "[t]he use of physical force, usu. accompanied by fury, vehemence, or outrage; esp., physical force unlawfully exercised with the intent to harm." BLACK'S LAW DICTIONARY 1801 (10th ed. 2014). We observe that, according to Ind. Code § 35-42-2-1, a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits the offense of battery as a class B misdemeanor. The statute further provides that the offense is elevated to a class A misdemeanor if the battery results in bodily injury which includes physical pain. This elevated class A offense was the offense which Putman committed against his grandchild. The offense for which Putman was convicted required more than simple physical contact with the victim; it required that the physical contact result in bodily injury. It is not unreasonable to conclude that an offense which results in bodily injury also includes an element which involves violence.[5]

---

[5] In *Halligan v. State*, which is cited by the dissent, this Court observed that the offense of assault and battery, as codified at the time, was defined as "[w]hoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery," whereas the elements of the separate crime of assault were different and that offense was defined as "[w]hoever . . . attempts to commit a violent injury upon the person of another, is guilty of an assault . . . ." 375 N.E.2d 1151, 1156 (Ind. Ct. App. 1978). We further noted that any touching, however slight, may constitute an assault and battery, but that "violent" indicates an extreme,

[18]     In addition, according to Putman's petition for judicial review, his battery conviction resulted from a spanking which he administered to his grandchild. Putman's daughter testified before the ALJ that Putman accidentally hit the dial button, it went to a recording, and in the recording her son is screaming and hollering that he was being choked. While we do not attempt to establish the boundaries of the occurrences in which an element of a misdemeanor offense involves violence, we cannot conclude that the Commissioner was unreasonable in determining that Putman's battery of his grandchild resulting in bodily injury included an element which involved violence for the purpose of revoking his bail agent license in this case. *See Fishburn*, 2 N.E.3d at 824-826 (holding that, "[w]here a statute is ambiguous, we defer to the agency's reasonable interpretation even over an equally reasonable interpretation by another party," noting that the statutory provision at issue "arguably support[ed] either of the competing interpretations advocated by the parties," and concluding that the agency's manner of applying the statute was "consistent with the language of the statute and is a reasonable interpretation of the statute and its goals" and "[w]e, accordingly, defer to [the agency's] reasonable interpretation of the statute").[6] Accordingly, we reverse the trial

---

intense, or strong, forceful injury. *Id*. at 1157. Here, Putman's conviction for battery was elevated from a class B misdemeanor to a class A misdemeanor, indicating that the battery resulted in bodily injury and was not a slight touching or a simple physical contact. *Halligan* did not address the "bodily injury" element of battery as a class A misdemeanor. Also, *Halligan* did not involve an interpretation of a statute by an administrative agency. *Halligan* does not render the Board's application of Ind. Code §§ 27-10-1-6 and -3-8(d) in this case unreasonable.

[6] To the extent Putman cites *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003), and *Szucz-Toldy v. Gonzales*, 400 F.3d 978 (7th Cir. 2005), we note those decisions involved determinations by the Board of Immigration

court's ruling and remand with instructions to enter an order which does not disturb the Commissioner's May 6, 2016 Final Order.

## *Conclusion*

[19] For the foregoing reasons, we reverse the ruling of the trial court and remand consistent with this decision.

[20] Reversed and remanded.

Baker, J., concurs.

Riley, J., dissents with opinion.

---

Appeals as to whether the petitioners had been convicted of a "crime of violence" for purposes of a statutory provision of the Immigration and Nationality Act. *See Flores*, 350 F.3d at 668; *Szucz-Toldy*, 400 F.3d at 979-981. As noted, Ind. Code § 27-10-1-6 defines a disqualifying misdemeanor offense as one which has an element involving violence, and the Commissioner's application of the statute to revoke Putman's bail agent license under the facts and where the offense resulted in bodily injury is not unreasonable. *Flores* and *Szucz-Toldy* are not controlling and are distinguishable.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Commissioner, Indiana Department of Insurance,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Alvin C. Putman,<br><br>*Appellee-Petitioner.* | Court of Appeals Case No. 49A05-1706-MI-1402<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Michael D. Keele, Judge<br><br>Trial Court Cause No. 49D07-1606-MI-20114 |

**Riley, Judge dissenting**

I respectfully dissent from the majority's decision to reverse the trial court's decision and to revoke Putman's bail agent license based on his conviction for a Class A misdemeanor. While I agree with the majority that the main issue focuses on whether a Class A misdemeanor battery includes an element of violence, I reach the opposite result.

The Commissioner is authorized to revoke a bail agent license if the bail agent is convicted of a "disqualifying offense." *See* I.C. § 27-10-3-8(d). A disqualifying offense is defined as either a felony or "[a] misdemeanor if an *element of the offense* involves dishonesty, violence, or a deadly weapon." I.C. § 27-10-1-6 (emphasis added). Accordingly, because Putman was convicted of a Class A misdemeanor, the revocation of his license would only be justified if "an element of the offense [included] dishonesty, violence, or a deadly weapon." I.C. § 27-10-1-6. Turning to the elements of a Class A misdemeanor battery, the legislature has defined the offense as:

> A person who knowingly or intentionally:
>
> (b)(1) touches another person in a rude, insolent, or angry manner; or (2) in a rude, insolent, or angry manner places any bodily fluid or waste on another person; commits battery, a Class B misdemeanor.
>
> (c) the offense described in subsection (b)(1) or (b)(2) is a Class A misdemeanor if it results in bodily injury to any other person.

I.C. § 35-42-2-1(B)(c). "Bodily injury" requires a finding of "any impairment of physical condition, including physical pain." I.C. § 35-31.5-2-29. Therefore, as the elements of a Class A misdemeanor battery include a finding of 'bodily injury' amounting to 'physical pain' but is silent as to an element of 'violence,' I conclude that a Class A misdemeanor battery is not a disqualifying offense for the purpose of revoking Putman's bail agent license. *See, e.g.*, *Halligan v. State*, 375 N.E.2d 1151, 1156-1157 (Ind. Ct. App. 1978) (distinguishing the elements

of battery from a violent injury and finding that "[v]iolent, on the other hand, indicates an extreme, intense, or strong, forceful injury"). I would affirm the trial court's decision.